# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Steven Trail,

        Plaintiff,

v.

3M Company and
Aearo Technologies LLC,

        Defendants.

Case No. 20-vc-1153

**NOTICE OF REMOVAL**

    Defendant 3M Company ("3M") hereby gives notice of removal of this action, pursuant to 28 U.S.C. §§ 1441, 1442(a)(1), and 1446, to the United States District Court for the District of Minnesota.

    This case is one of hundreds of lawsuits filed against 3M alleging injury caused by Combat Arms™ Earplugs, Version 2 ("CAEv2"), almost all of which have been removed to the District Court of Minnesota and transferred to a Multidistrict Litigation Court ("MDL Court") in the Northern District of Florida. *See In re 3M Combat Arms Earplug Prod. Liab. Litig.* ("*In re 3M*"), No. 3:19-md-2885, 2020 WL 365617, at *1 (N.D. Fla. Jan. 22, 2020). The MDL Court has denied remand for each of the cases transferred to the MDL, including those involving non-military plaintiffs. *Id.*; *see also Pate v. 3M Co.*, No. 19-cv-00793-JRT-KMM, Dkt. No. 1-1, Compl. ¶¶ 8-9 (D. Minn. Mar. 21, 2019) (case involving non-military plaintiff transferred to MDL); *Denman v. 3M Co.*, No. 19-cv-921-NEB-SER, Dkt. No. 1-1, Compl. ¶ 1 (D. Minn. Apr. 3, 2019) (same).

    The only cases remanded to state court to date is *Graves v. 3M Company*, *Co.*, No. CV 19-3094 (JRT/KMM), 2020 WL 1333135 (D. Minn. Mar. 23, 2020). That case differed

from prior cases in that it involved a non-military plaintiff asserting only a failure-to-warn claim and attempted (though not entirely) to delete allegations of defective design. In its remand decision, the court concluded that 3M met most elements of the federal officer removal statute, but failed to demonstrate a colorable federal defense. *Id*. at *8-*13[1]. Like the plaintiff in *Graves,* Plaintiff asserts only a failure-to-warn claim. But Plaintiff repeatedly and explicitly bases his claim on allegations of defective design, to a degree far greater than the plaintiff in *Graves*. Defendants remove this case both to preserve the jurisdictional arguments now on appeal to the Eighth Circuit in *Graves* and because the design-defect allegations in the Complaint are materially different.

Plaintiff Steven Trail seeks to hold Defendants 3M and Aearo Technologies LLC[2] liable for his tinnitus and hearing loss. (Compl. at ¶ 11.) He alleges that the CAEv2 manufactured and sold by Aearo were defectively designed Plaintiff also alleges that 3M failed to provide adequate hearing protection and that Defendants failed to warn him of the alleged defective design, but this claim is based upon and incorporates his design-defect allegations and is essentially a design-defect claim. 3M denies all these allegations.

---

[1] This Court, in *Graves*, determined that there was a causal connection between 3M's actions and its official authority. *Id*. at *7-*8. While the Court did not expressly determine that 3M was a "person" that was "acting under" the direction of a federal officer, such a determination was necessarily implied.

[2] 3M acquired Aearo Technologies, Inc. ("Aearo") in 2008. After acquiring Aearo in 2008, 3M continued to sell CAEv2. Aearo Technologies LLC, named in the Complaint, is a different entity from Aearo. Nonetheless, it consents to this removal.

CAEv2, designed by Aearo in close collaboration with the U.S. military, represented a revolutionary breakthrough in hearing protection for service members. CAEv2 helped soldiers better maintain situational awareness (e.g., to hear nearby voice commands) while also maintaining some protection from gunfire and other higher decibel sounds. 3M and Aearo later provided the same product to the commercial market, and the U.S. military was involved in developing the fitting instructions included with the commercial CAEv2.

Here, Plaintiff alleges that the instructions incorporated in the commercial product cause the CAEv2 to be defective. 3M created these instructions while acting under the authority of the U.S. military, and it is asserting a colorable federal defense: the government contractor defense. As such, 3M is entitled to remove this action under the federal officer removal statute to have its federal defense adjudicated in a federal forum. 28 U.S.C. § 1442(a)(1). Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008) (*citing Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 127 (2007)).

Removal is timely because this action was served on 3M on April 14, 2020. Venue is proper pursuant to 28 U.S.C. §§ 103 and 1442(a) because the Fourth Judicial District is located within this District. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Fourth Judicial District.

## BACKGROUND

The CAEv2 is an earplug developed specifically for the needs of the U.S. military for use as hearing protection in noisy environments. CAEv2 has a yellow end and green end. Each end has a different purpose. When the yellow end of the earplug is inserted, users can still hear nearby low-level sounds, like verbal communication, but receive protection from high-level impulse noise, like gunfire. In contrast, when the green end of the earplug is inserted, CAEv2 acts like a traditional earplug, providing steady and continuous protection from both ambient and impulse noise.

In the area of national defense, the U.S. military relies on close collaboration with private contractors to design and develop products, such as the CAEv2, that satisfy the operational and budgetary needs of the nation's fighting forces. This litigation involves a classic example of that military-contractor collaboration.

CAEv2 was designed at the request of and in consultation with military audiologists, including Dr. Doug Ohlin. Ohlin at the time served in the capacity of Program Manager, Hearing Conservation, U.S. Army Center for Health Promotion and Preventive Medicine (USACHPPM). Ohlin and his program gave direction to Aearo to ensure that the CAEv2 would meet the military's operational needs. For example, Ohlin proposed the inclusion of the filter that was a key updated feature of the CAEv2. Ohlin also specifically directed Aearo to shorten the CAEv2 so that it would be compatible with soldiers' headgear and would fit into a military-issued carrying case.[3]

---

[3] Ohlin's involvement continued following the military's decision to purchase and deploy

Aearo later made the CAEv2 available for non-military uses, including the firing range, hunting, and law enforcement. These were sold in a blister pack. The back of the blister pack included a set of instructions and the Noise Reduction Rating (NRR) identified by the military and required by federal regulation. An additional lengthier set of instructions were also prepared to be inserted inside the blister pack. The "Fitting Tips" stated: "Fitting is easier if ear is pulled upward and outward during insertion and is also improved if the sealing rings of the outward directed plug are rolled back upon themselves." Aearo approached Ohlin for his review of the instructions. Dr. Ohlin said the inserted set of instructions "[l]ooks great" but observed that the instructions lacked language on "potential sizing issues for the smaller ear canals and single-sided version [of the earplugs] as an alternative." Aearo updated its instructions to include this language.

In sum, the CAEv2 was launched at the request of, and designed in close coordination with, the U.S. military. The CAEv2 sold to civilians used the same design as those created in coordination with the U.S. military. And the labels and instructions included when sold commercially incorporated feedback from the U.S. military.

## BASES FOR FEDERAL JURISDICTION AND REMOVAL

**I.   REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE.**

Removal is proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts that occurred at least in part "*because of* what they were asked

---

the CAEv2. He provided Aearo with feedback from military personnel as to using the CAEv2 and developed training and instructions for military personnel.

5

to do by the Government." *Isaacson*, 517 F.3d at 137. Removal rights under this section are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because Section 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prod.*, No. 11 Civ. 5990 (BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011). This important federal policy "should not be frustrated by a narrow, grudging interpretation of s 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

The removing defendant must establish that: (1) the defendant is a "person" under the statute; (2) the defendant was "acting under" the direction of a federal officer when it engaged in the allegedly tortious conduct; (3) there is a causal connection between the defendant's actions and the official authority; and (4) the defendant raises a "colorable" federal defense. *See Mesa v. Cal.*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989); *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012). All requirements for removal under § 1442(a)(1) are satisfied here. *Cf., e.g.*, *In re 3M*, 2020 WL 365617 at *1; *Ayo v. 3M Co.*, No. 18-CV-0373 (JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in case where product liability was sought for defendants' product's conformance with military specifications).

### A. The "Person" Requirement Is Satisfied.

The first requirement for removal under Section 1442 is satisfied because 3M is a "person" under the statute. "[T]he 'person' contemplated by the federal officer removal statute includes corporations." *Jacks*, 701 F.3d at 1230.

### B. The "Acting Under" Requirement Is Satisfied.

To satisfy the second requirement ("acting under" a federal officer) "a private person's actions 'must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" *Id.* (holding that health insurer contracted by U.S. Office of Personnel Management was "acting under" a federal officer) (*quoting Watson*, 551 U.S. at 152). "The words 'acting under' are to be interpreted broadly." *Isaacson*, 517 F.3d at 136. Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 813 (3d Cir. 2016); *see also Jacks*, 701 F.3d at 1230 (although "not limitless, '[t]he words "acting under" are broad,' and the Supreme Court 'has made clear that the statute must be "liberally construed."'") (*quoting Watson*, 551 U.S. at 147).

The "acting under" requirement is met here because Plaintiff challenges Defendants' conduct while designing, testing, and writing instructions for the CAEv2. As discussed above, Aearo designed and manufactured the CAEv2 at the direction of the U.S. military to meet the military's specific needs to provide hearing protection and developed fitting instructions in coordination with the U.S. military.

The military directed and approved the design of the CAEv2, including its length,

7

and edited and approved the instructions included with the commercial product. *See, e.g.*, *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (holding that defendant was "acting under" a federal officer because it "worked hand-in-hand with the government, assisting the federal government in building warships. 'Acting under' covers situations, like this one, where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete."); *Isaacson*, 517 F.3d at 137 ("Defendants contracted with the Government to provide a product that the Government was using during war—a product that, in the absence of Defendants, the Government would have had to produce itself.").

Plaintiff's allegation that he used the CAEv2 while employed in the private sector, (Compl. at ¶¶ 8-9), does not change that Aearo was "acting under" a federal officer when it designed the earplugs and finalized the language for fitting instructions. For example, in *Stallings*, the defendant removed a case involving steam turbine engines originally designed for and with the U.S. Navy under the federal officer removal statute. *Stallings*, 2013 WL 1563231, at *1. Plaintiffs argued that defendants were not "acting under" a federal officer because defendant "manufactured the turbines for military and public consumption," which, according to those plaintiffs, "destroy[ed] Defendants' argument that the military had extensive control" over the design. *Id.* at *3. The court rejected that argument (and denied plaintiff's motion to remand) because the turbines were designed to the military's specifications, and thus "[e]ven if Plaintiffs prove that [Defendants] sold these exact turbines to non-governmental entities, this does not undermine Defendants' demonstration, for the purpose of removal, that the Navy possessed extensive control over

the design and manufacture of these turbines such that [Defendants'] production thereof was effectively acting under a federal agency." *Id*. So too in this case. Because the U.S. military "possessed extensive control over the design and manufacture" of the CAEv2 product design and labels, Aearo was "effectively acting under a federal agency," even if Plaintiff proves that the CAEv2 were also available to non-governmental entities. *Id*.

### C.  The "Causation" Requirement Is Satisfied.

The third prong, that a defendant's actions were taken "under color of federal office . . . has come to be known as the causation requirement." *Isaacson*, 517 F.3d at 137 (internal quotation marks, alterations, and citation omitted). Like the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Id.* Courts "credit Defendants' theory of the case when determining whether [this] causal connection exists." *Isaacson*, 517 F.3d at 137 (*citing Acker*, 527 U.S. at 431-32 (1999) ("demanding an airtight case on the merits in order to show the required causal connection" would "defeat the purpose of the removal statute")).[4] In 2011, Congress further expanded Section 1442 by amending section 2(b) to permit removal "for ***or relating to*** any acts under color" of federal office, so as "to broaden the universe of acts that enable Federal officers to remove to Federal court." H.R. REP. 112-17, 6, 2011 U.S.C.C.A.N. 420, 425 (emphasis showing addition).

"To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack . . . occurred ***while*** Defendants were performing their official duties."

---

[4] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

9

*Isaacson*, 517 F.3d at 137-38 (emphasis in original). Here, Plaintiff's claims arise from Defendants' production and sale of CAEv2 to the specifications approved by the military. Plaintiff alleges that the design of the CAEv2 is defective and that the instructions for the CAEv2 were inadequate. Aearo developed and designed the Combat Arms™ earplugs, including the instructions included with the commercial product, at the direction of federal officers.

Further, even if Plaintiff was to prove that any alleged defect was the result of an act not specifically contemplated by the government contract, "it is enough that the contracts gave rise" to the harm alleged. *Id.* at 138. "[W]hether the challenged act was outside the scope of Defendants' official duties, or whether it was specifically directed by the federal Government, is one for the federal—not state—courts to answer." *Id.* (*citing Willingham*, 395 U.S. at 409.). This Court has addressed this precise activity in another case, and found that 3M had "demonstrate[ed] that the warnings and instructions for its earplugs plausibly have some connection to, or association with, governmental actions," meeting the "initial low hurdle" to meet this requirement. *Graves*, 2020 WL 1333135 at *8.

### D. The "Colorable Federal Defense" Requirement Is Satisfied.

The fourth requirement (establishing a "colorable federal defense") is satisfied by 3M's assertion of the government contractor defense. Courts around the country have held that the government contractor defense supports removal under § 1442(a)(1). *See, e.g.*, *Isaacson*, 517 F.3d at 139 (government contractor defense supports removal); *Zeringue v. Crane Co.*, 846 F.3d 785 (5th Cir. 2017) (same).

A defendant need not prove its defense at the removal stage; a defendant need only show that a federal defense is "colorable." *Jacks*, 701 F.3d at 1235. Courts will not "require that these defenses be clearly sustainable in order to support removal under § 1442(a)(1)." *Id*. (*citing Willingham*, 395 U.S. at 406–07 ("[The federal officer removal statute] is broad enough to cover all cases where federal officers can raise a colorable defense. . . . The officer need not win his case before he can have it removed.").)

At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014). (citing *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n. 12 (2006)).[5] Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783-84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (quoting *Willingham*, 395 U.S. at 409).

Under the government contractor defense, the defendant is not liable for alleged defects or negligence with respect to military equipment or supplies "when (1) the United

---

[5] *See also Kraus v. Alcatel-Lucent*, Civil Action No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determines whether there are sufficient facts alleged to raise a colorable defense.").

11

States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. This defense extends to failure-to-warn claims. *Graves*, 2020 WL 1333135 at *8 n.3; *see also Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 211 (4th Cir. 2016) ("[W]e now join the chorus and hold that the government contractor defense is available in failure to warn cases." (collecting cases)). 3M has satisfied each of these elements for purposes of removal.

The government contractor defense applies to each of these design, instruction, and label elements provided by the military. Plaintiff in this case focuses on the instructions included with the civilian CAEv2, but the military reviewed and approved those very instructions. Aearo also did not fail to inform the government of "known dangers" when it approved the specifications and instructions. First, there was no "known danger" Defendants were obligated to disclose. The CAEv2 met the military's attenuation expectations for dual-ended earplugs with or without the flanges folded back. Second, to the extent there were "dangers," Aearo's engineers did inform the government of its testing results and the fitting issues created by the military's request to shorten the product. And third, the military was also fully aware of any issues as a result of its own testing and use of the CAEv2. *See e.g.*, *Zinck v. ITT Corp.*, 690 F. Supp. 1331, 1332–33, 1337–38 (S.D.N.Y. 1988) (finding military's field tests alerted the military to product limitations); *Haltiwanger v. Unisys Corp.*, 949 F. Supp. 898, 900-01, 905 (D.D.C. 1996) (finding

government was "independently aware" of product limitations as a result of its own "extensive testing" and long use).

3M has established a colorable defense of government contractor immunity for state tort claims arising out of language dictated by the government, just as it has immunity for design choices required by the government that are incorporated in the commercial CAEv2.

<u>Moreover, while framing his claim as a failure-to-warn claim, it is clear that Plaintiff is in fact alleging a claim based upon allegations of defective design. The Complaint is rife with express allegations of defective design that were not included in the *Graves* complaint:</u>

- "This is a product liability action related to a defective earplug manufactured and sold by Defendants." (Compl. ¶ 1.)

- "At all relevant times, the [CAEv2] had a dangerous design defect that caused them to imperceptibly loosen in the wearer's ear, thus allowing damaging sounds to enter the ear canal around the outside of the earplug." (*Id*. ¶ 16.)

- "Aearo learned of this design defect when it completed testing of the [CAEv2]." (*Id*. ¶ 17.)

- Aearo was expecting to achieve an NRR of 22 with the green end inserted, but in fact was on target to receive a 10.9 rating based on the experiences of the first eight subjects. These disappointing results were caused by the design defect described above." (*Id*. ¶ 22.)

- "Due to the symmetrical nature of the [CAEv2], the design defect that affected the fit of the green end similarly affected the fit of the yellow end." (*Id*. ¶ 28.)

- "Because the defect was imperceptible to the wearer, Defendants' design defect went undetected for more than a decade by those who wore them." (*Id*. ¶ 32.)

- "Defendants had a duty to manufacture, design, and sell the [CAEv2] with reasonable and due care for the safety and well-being of wearers, including Plaintiff. Defendants breached that duty." (*Id*. ¶ 44.)

This is nothing more than a dressed-up design defect claim. *See Nicholson v. United Techns. Corp.*, 697 F. Supp. 598, 603 (D. Conn. 1988) ("In some cases, duty to warn claims merely repeat design defects."); *Koutsoubos v. Boeing Vertol, Div. of Boeing Co.*, 553 F. Supp. 340, 344, 344 n.6 (E.D. Pa. 1982) (failure-to-warn claims that are "merely repetitive of plaintiff's assertions concerning design defects" and only allege that the defendants failed to warn that the product "had not been properly designed, manufactured, assembled and tested" simply repeat design defect claims.) *aff'd*, 755 F.2d 352 (3d Cir. 1985). In such cases, a defendant's government contractor defense regarding the design defect also applies to the failure-to-warn defect. *Koutsoubos,* 553 F. Supp. At 344; *Nicholson*, 697 F. Supp. at 603.

The MDL Court has concluded that 3M has alleged a colorable government contractor defense regarding any alleged design defect. *In re 3M*, 2020 WL 365617, at *5. For this additional reason, there is federal jurisdiction in this case.

## **CONCLUSION**

For all the foregoing reasons, 3M hereby removes this action from the Fourth Judicial District Court of Minnesota, Hennepin County, to this Court. As noted above, co-defendant Aearo Technologies LLC consents to this removal.

Dated: May 13, 2020						Respectfully submitted,

							*s/ Benjamin W. Hulse*
							Jerry W. Blackwell (MN #186867)
							Benjamin W. Hulse (MN #0390952)
							S. Jamal Faleel (MN #0320626)
							BLACKWELL BURKE P.A.
							431 South Seventh Street, Suite 2500
							Minneapolis, MN 55415
							Phone: (612) 343-3200
							Fax: (612) 343-3205
							Email: blackwell@blackwellburke.com
							         bhulse@blackwellburke.com
							         jfaleel@blackwellburke.com

							**Counsel for Defendant 3M Company**